## Case No. 4,979.

### FOSTER v. PEASLEE.

[21 Law Rep. 341; 36 Hunt. Mer. Mag. 454.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1856.

[1] [36 Hunt. Mer. Mag. 454, contains only a partial report.]

Milton Andros, for plaintiff.
B. F. Hallett, for defendant.

CURTIS, Circuit Justice. The collection act of March 2, 1799, by its 41st section, requires the delivery to the importer of distilled spirits, of a particular certificate, in the form prescribed, to accompany each cask, wherever the same may be sent within the limits of the United States, as evidence that the same have been lawfully imported. The 43d section enacts that the importer shall deliver to the purchaser of each cask the certificate belonging thereto, on pain of forfeiting fifty dollars for neglecting so to do; and if any such cask of distilled spirits be found in the possession of any person unaccompanied by its certificate, it shall be presumptive evidence of its being liable to forfeiture, and shall be seized and a forfeiture inflicted, if the claimant shall fail to prove on the trial that it was legally imported, and the duties paid thereon. It is stated at the bar that these certificates continued to be given, pursuant to the above directions of the collection act, until the year 1850, when, by a circular of the 28th of March of that year, the then secretary of the treasury directed the collectors of the customs to discontinue their delivery, unless the importer should request it and pay fees to the officer for making the same.

The grounds upon which the defendant's counsel has rested the justification of this change of practice are, that the main purpose of these provisions of the collection act of 1799 was to guard against fraudulent claims for drawbacks on the exportation of spirits, wines, and teas, for which opportunity was given by other provisions of law, which allowed those articles to go into the possession of the importer; and that, as by force of the acts of April 20, 1818 (3 Stat. 469), and March 3, 1849, § 5 (9 Stat. 390), drawbacks cannot be claimed on the export of any articles, save those which have remained in the public stores, the opportunity for frauds and the necessity of the certificates, marks, &c., to guard against them no longer exist, and the secretary of the treasury had power to dispense with them.

Without stopping to inquire whether the secretary of the treasury has power, in any case, to order the collectors of customs to disobey the positive requirement of an unrepealed act of congress, because later legislation has rendered that requirement, in his opinion, unnecessary, I think it clear that, in this case, he had not power to order these certificates to be discontinued. The purpose of these provisions of the act of 1799 was not limited to the prevention of fraudulent claims for drawbacks. The object was to afford security against illegal importations. This appears from the provisions requiring the certificate to accompany each cask when sold, though the time limited for exportation may have expired; and also from the change of the burthen of proof respecting the legality of the importation, if such a cask be found in the possession of any person unaccompanied by the appropriate certificate. This rule of evidence the secretary of the treasury has no power to repeal, and it is the law of the land now; and if so, it cannot be maintained that the secretary has power to direct his subordinates to withhold these necessary documents altogether, and thus subject the importer to the penalty which is inflicted for selling without a certificate, or the purchaser to the risk of seizure and condemnation; or to withhold them unless the importer will pay fees for them, thus exacting from the importer a tax not imposed by law. My opinion is that upon the facts agreed the plaintiff is entitled to a judgment.